Jon G. Shadinger Jr., Esq. (036232017)
Shadinger Law, LLC
2220 N East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Charlene Cheli*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| CHARLENE CHELI, an Individual | |
| Plaintiff, | Case No. 1:25-cv-16863 |
| vs. | |
| GULPERI, LLC, a New Jersey Limited Liability Company, | **COMPLAINT** |
| Defendant. | |

### Introduction

Plaintiff, CHARLENE CHELI, an individual, on her own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendant, GULPERI, LLC, a New Jersey Limited Liability Company, ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

**The Parties**

1.    Plaintiff, CHARLENE CHELI, is an individual over eighteen years of age and is otherwise sui juris. Ms. Cheli resides at 1380 Washington Ave, Vineland, NJ 08361.

2.    Defendant, GULPERI, LLC, owns and/or operates a place of public accommodation, in this instance a restaurant and bar, alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

**Jurisdiction and Venue**

3.    Defendant's property is a restaurant, known as Maurice River Diner, located at 3830 Route 47, Port Elizabeth, NJ 08348 ("Property").

4.    Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs.  The Defendant's property is located in and does business within this judicial district.

5.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

6.    Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

7.    The Defendant owns, leases, leases to, and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA.  The Defendant is thus required to comply with the obligations of the ADA.[2]

8.    Plaintiff, CHARLENE CHELI, is an individual with disabilities - as defined by and

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202

[2] 28 CFR § 36.201(a) and 28 CFR § 36.104

pursuant to the ADA. Ms. Cheli has been diagnosed with facioscapulohumeral muscular dystrophy and therefore has a physical impairment that substantially limits many of her major life activities[3] including, but not limited to, not being able to walk, stand, reach, or lift. Ms. Cheli requires, at all times, the use of a wheelchair to ambulate.

**Factual Background**

9.    Ms. Cheli is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of her wheelchair to ambulate) she has dedicated her life to the elimination of accessibility discrimination so that she, and others like her, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

10.    Ms. Cheli is a member of an advocacy group, known as The Independence Project, whose goal is to foster a community of disabled people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country.

11.    Ms. Cheli encounters architectural barriers at many of the places that she visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when improperly designed or implemented, can be arduous and even dangerous to those in wheelchairs.

12.    The barriers to access that Ms. Cheli experiences at differing places of public accommodation are often similar in nature. For example, she is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms. She has become frustrated and disheartened by the repetitiveness of the

---

[3] as defined by 28 CFR § 36.105(b)(1-2)

complaints she has been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, she now finds her redress through the ADA; as Congress intended.

13.     Ms. Cheli has visited the Property on many occasions (both before and after becoming fully disabled and requiring the constant use of a wheelchair), her last visit having occurred in May 2025.

14.     Ms. Cheli has also inspected this property for continued compliance with the ADA. As a member of The Independence Project, the Plaintiff inspects properties that were previously in violation of the ADA and subject to litigation by the organization and/or its members. Such properties are inspected by Ms. Cheli, or other members (based on geography), in order to determine if such have been made accessible and continue to remain in compliance; it is normal practice to inspect the properties under one's purview at least twice per year.

15.     Ms. Cheli has visited the Property with the intent to avail herself of the goods and services offered to the public within but found that the Property a contained a litany of ADA violations – both in architecture and policy.

16.     Ms. Cheli shall return to the Property not only as a patron but also to monitor any progress made with to respect to ADA compliance – she sincerely hopes that her return visits are not made in vain.

17.     In addition to the above, Ms. Cheli frequently travels to the Wildwood, Cape May, and other shore locations during the summer months – as most South Jersey locals do – for shopping, entertainment, and leisure purposes. The Property is located sixteen miles from her home on the direct route from her home to these locations.

18.     Ms. Cheli has personally encountered and physically experienced exposure to architectural

barriers and otherwise harmful conditions that have endangered her safety, caused her inconvenience, and forced her to suffer dignitary harm at the Property.

19.    The ADA has been law for over thirty (30) years and yet the Property remains non-compliant. Thus, the Ms. Cheli has actual notice and reasonable grounds to believe that she will continue to be subjected to discrimination by the Defendant.

20.    Ms. Cheli has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers she has personally experienced which are listed in Paragraph 28 of this complaint.

21.    Following any resolution of this matter Plaintiff will ensure that the Defendant undertakes the remedial work that is required to cure existing violations, under the appropriate standard and in compliance with the ADA.

## COUNT I
### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

22.    Plaintiff realleges and incorporates by reference all of the allegations contained in each of the preceding paragraphs.

23.    Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of society."[4]

24.    Congress's objective was "the elimination or reduction of physical and social structures"

---

[4] 42 U.S.C. § 12101(a)(1)

that thwart "equal-citizenship stature for persons with disabilities."[5]

25.    Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on the basis of disability." [6]

26.    The Defendant has discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

27.    A preliminary inspection of the Property has shown that violations of the ADA exist.  That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in Paragraph 28 are both technically feasible and readily achievable. Plaintiff's expert has based this judgement on personal knowledge of materials, pricing, labor, and the completion of similar projects in the area. The remaining barriers to access – which are procedural in nature and/or policy based – will need to be monitored into the future to ensure that the current discrimination is ceased and never reinstituted.

28.    The following are architectural barriers and violations of the ADA that Ms. Cheli has personally encountered during her visits to the Property:

**<u>Parking and Exterior Accessible Route</u>**

   a.    The designated accessible parking spaces located at the Property lack proper access aisles, contain sloping beyond allowable limits due to protruding curb ramps, and abrupt changes

---

[5] *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring)

[6] 42 U.S.C. § 12188(a)(1)

in level; a violation of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. These barriers have prevented Ms. Cheli from freely unloading from her van which utilizes a fold-out ramp; to avoid becoming blocked out by other vehicles she has been forced to park away from the facility in a flat, maintained area, travel around obstacles, and then through the vehicular area of the parking lot in order to reach the entrance. Ms. Cheli's fold-out ramp requires a flat surface in order to fully extend, due to the protruding curb ramps she cannot utilize the accessible parking spaces.

b.  The accessible parking at the Property fails to provide a compliant accessible route leading from the accessible parking area to the entrances and/or accessible curb ramps. The route is impeded by excessive sloping and abrupt changes of level; violations of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. These conditions have presented Ms. Cheli with a tipping hazard which could cause injury from a fall and damage to her wheelchair.

c.  The exterior accessible route at the Property is impeded by excessive cross-sloping and abrupt changes in level; in violation of the ADAAG and Section 402 of the 2010 ADA Standards. Ms. Cheli has been impeded by the excessive sloping and abrupt changes of level while traveling from the parking lot to the entrance – these conditions present a tipping hazard which could cause a fall and damage to her wheelchair.

d.  The Property fails to provide the requisite number of compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van-accessible access aisles), a violation of Section 502 of the 2010 ADA Standards. Due to the lack of accessible parking, Ms. Cheli has been forced to park away from the establishment and across the street – as detailed above – so that she could freely access her

7

vehicle without the fear of becoming blocked out by adjacent vehicles – which would prevent her from accessing her vehicle's ramp.

e.  The Property fails to provide a continuous accessible route throughout the entirety of the Property; the existing route contains excessive cross-sloping and abrupt changes of level. These architectural barriers have prevented Ms. Cheli from travelling across the entirety of the Property in her wheelchair and constitute a violation of the ADAAG and Section 402 of the 2010 ADA Standards.

f.  The Property fails to provide a compliant route to the adjacent street, sidewalk, and/or public transportation route. Ms. Cheli has been precluded from accessing the Property from these points of entry due to the lack of an accessible route; a discriminatory omission which limits her options for transportation and is a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

**Access to Goods and Services**

g.  Payment counters/work surfaces throughout the interior of Maurice River Diner are mounted beyond Ms. Cheli's reach; a violation of the ADAAG and Sections 308 and 904 of the 2010 ADA Standards. These barriers have prevented her from freely accessing these elements within both the restaurant and the outdoor bar.

h.  Maurice River Diner fails to provide the requisite number of accessible dining tables (both interior and exterior); in violation of the ADAAG and Section 902 of the 2010 ADA Standards. Due to the lack of accessible tables Ms. Cheli could not dine comfortably. The dining area at the exterior of Crabby Jack's also lacks the requisite wheelchair maneuvering clearance and is inaccessible to Ms. Cheli; preventing her from dining outdoors.

**Restrooms**

    i.   The restrooms located within Maurice River Diner are inaccessible to Ms. Cheli (and all mobility impaired persons). The barriers to access on the include water closets which contain improper centerlines for the toilets, improperly located grab bars, and an overall lack of wheelchair maneuvering space; violations of the ADAAG and Section 601 of the 2010 ADA Standards. These barriers have prevented Ms. Cheli from freely using the restrooms.

29.    Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[7]

30.    The discriminatory violations described in Paragraph 28 may not be an exhaustive list of the ADA violations that exist at the Property but are the result of a preliminary inspection and include those personally experienced by Ms. Cheli.

31.    Given the violations discovered and listed herein the Plaintiff alleges, on information and belief, that there are other violations/barriers at the Property which relate to her disability. Thus, Plaintiff requires thorough inspection of the Property in order to photograph and measure the

---

[7] 28 CFR § 36.104

architectural barriers which exist at the Property in violation of the ADA. Once said inspection has

been completed, the Plaintiff may amend this complaint in order to provide proper notice to the

Defendant regarding the full scope of this action.[8]

32.    Plaintiff, and other mobility impaired persons, will continue to suffer discrimination, injury

and damage without the immediate relief provided for by the ADA and requested herein.

33.    Defendant has discriminated against Plaintiff, and other mobility impaired persons, by

denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages

and/or accommodations of its place of public accommodation or commercial facility in violation

of the ADA.

34.    Defendant continues to discriminate against Plaintiff, and other mobility impaired persons,

by failing to remove architectural barriers, and communication barriers that are structural in

nature.[9]

35.    Defendant continues to discriminate against Plaintiff, and other mobility impaired persons,

by failing to make reasonable modifications in policies, practices, or procedures, when such

modifications are necessary to afford all offered goods, services, facilities, privileges, advantages,

or accommodations to individuals with disabilities.[10]

36.    Defendant continues to discriminate against Plaintiff, and other mobility impaired persons,

by failing to take such efforts that may be necessary to ensure that no individual with a disability

is excluded, denied services, segregated, or otherwise treated differently than other individuals

---

[8] See *Doran v. 7-Eleven Inc.*, (9th Cir. 2008) 524 F.3d 1034 (holding that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether or not they personally encountered them)

[9] 42 U.S.C. § 12181(b)(2)(A)(iv)

[10] 42 U.S.C. § 12181(b)(2)(A)(ii)

because of the absence of auxiliary aids and services.[11]

37.     If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[12] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

38.     Pursuant to 28 CFR § 36.304(a) the Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable; this duty is continuous and ongoing – regardless of when the facility was designed and constructed for first occupancy.

39.     Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Ms. Cheli, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[13] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

40.     28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element - that has not been altered - must comply with or be modified to meet. Those are defined as follows:

    a.  Elements that have not been altered since on or after March 15, 2012, must comply with

---

[11] 42 U.S.C. § 12181(b)(2)(A)(iii)

[12] as defined by 28 CFR § 36.401(a)(2)

[13] 28 CFR § 36.402(a)(2)

the 1991 Standards.

    b.   Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with either the 1991 Standards or the 2010 Standards.

    c.   Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

41.    Plaintiff is not required to notify the Defendant of its violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiff has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In her experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

42.    Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cures all violations of the ADA.[14]

43.    Plaintiff is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted.  The public interest would not be disserved by the issuance of a permanent injunction.

44.    Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff is entitled to recovery of

---

[14] 42 U.S.C. § 12188(b)(2)

attorney's fees, costs, and litigation expenses from the Defendant.

**WHEREFORE,** Plaintiff respectfully demands;

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein – and those later found through discovery – within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II
### Violation of New Jersey Law
### Against Discrimination, N.J.S.A. 10:5-1 et seq.

45.    Plaintiff realleges and incorporates, by reference, all of the allegations contained in each of the preceding paragraphs.

46.    The Property is a place of public accommodation as defined by N.J.S.A 10:5-5.

47.     New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability.  This opportunity is recognized and declared to be a civil right.[15]

48.     As set forth above, the Defendant has violated the LAD by denying Ms. Cheli, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

49.     As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Ms. Cheli has sustained bodily injury through the Defendant's actions – either intentionally or negligently – in the form of emotional distress, mental anguish, dignitary harm, and humiliation, in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands;

a.  That this Court assume jurisdiction.

b.  The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

c.  An injunction ordering Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d.  A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted – attorney's fees, and litigation expenses; including expert fees and costs.

e.  An order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

---

[15] Pursuant to N.J.S.A 10:5-4

f.  Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 23rd day of October 2025,

> _/s/ Jon G. Shadinger Jr._
> Jon G. Shadinger Jr., Esq.
> Shadinger Law, LLC
> 2220 N East Avenue
> Vineland, NJ 08360
> (609) 319-5399
> js@shadingerlaw.com
> _Attorney for Plaintiff, Charlene Cheli_

15